# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CATERINA LETICIA GOMEZ RIQUIAC, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) ) |
| WARDEN/FACILITY ADMINISTRATOR, DIAMONDBACK CORRECTIONAL FACILITY, et al., | ) ) ) ) ) ) |
| Respondents.[1] | ) |

Case No. CIV-26-1091-D

## REPORT AND RECOMMENDATION

Petitioner Caterina Leticia Gomez Riquiac, a noncitizen proceeding pro se,[2] seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[3] United

---

[1]   Fred Figueroa is the Warden of the Diamondback Correctional Facility. https://www.corecivic.com/facilities/diamondback-correctional-facility (last visited July 9, 2026). Warden Figueroa is not a federal official, so the Government has not filed its response on his behalf.

[2]   This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)). Because Petitioner is proceeding pro se, the Court liberally construes her arguments. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*

[3]   Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

States District Judge Timothy D. DeGiusti referred the case to the undersigned Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 10. The Government responded, Doc. 14, and the time for Petitioner to reply has lapsed, *see* Doc. 11. So the matter is at issue.

For the reasons below, the undersigned recommends the Court grant Petitioner's habeas petition, in part, and order her immediate release.

## I.    Factual background and procedural history.

Petitioner is a citizen of Guatemala who entered the country on or about June 5, 2018. Doc. 1, at 9. At some point, the Department of Homeland Security (DHS) placed her into removal proceedings and released her. *See generally id.* Petitioner filed an application for asylum and obtained a work permit. *Id.* at 9-10. An Immigration Judge (IJ) found Petitioner ineligible for asylum and ordered her removed to Guatemala. Doc. 14, at 2 (citing Ex. 1).

Petitioner appealed the IJ's decision to the Board of Immigration Appeals (BIA), and her appeal remains pending. https://acis.eoir.justice.gov/en/caseInformation (last visited July 9, 2026). She states she has no serious criminal record. Doc. 1, at 12.

"On or about January 5, 2026, Petitioner was traveling with friends when the driver of the vehicle stopped at or near a gas station." *Id.* at 10. At some point, "officials requested identification documents from everyone in the

2

car, including Petitioner." *Id.* She received no explanation for why she was being seized, and she showed her valid work permit. *Id.* She alleges the arresting party had no judicial warrant or probable cause. *Id.*

## II.    Petitioner's claims.

Petitioner raises seven grounds for relief:

(1)    Her detention violates due process because it is arbitrary, unsupported by individualized justification, and excessive in relation to any civil immigration purpose;

(2)    The arresting authorities lacked probable cause, a judicial warrant, or a specific criminal allegation for her initial seizure and custody;

(3)    Repeated transfers by the Government have interfered with her access to court, family contact, and meaningful preparation of her case;

(4)    Her conditions of detention are punitive, unsafe, and inconsistent with civil immigration detention;

(5)    Denial and delay of medical care violate her constitutional protections; and

(6)    She is neither a flight risk nor a danger and should be released with conditions;

(7)    The risk of removal or third-country transfer before judicial review would cause her irreparable harm.

*Id.* at 12-15.

Petitioner seeks her immediate release under appropriate supervision, or, in the alternative, a prompt individualized bond hearing where the

3

Government bears the burden of showing Petitioner is a danger or flight risk by clear and convincing evidence; declaration that her detention violates the Due Process Clause of the Fifth Amendment; adequate medical evaluation and treatment while she is in Respondents' custody; constitutionally adequate food, water, and living conditions while this action remains pending; prohibition of a retaliatory transfer or other retaliatory action based on her "exercise of her right to file this habeas action"; and a prohibition on her removal from the United States while this action is pending. *Id.* at 15-16.

Petitioner also filed four Emergency Motions seeking a temporary restraining order (TRO), a stay of removal, expedited consideration of her Petition, and immediate release. Docs. 3-6. The Court denied the TRO motion. Doc. 15. The Court addressed Petitioner's requests involving transfer (Grounds 3 and 7), and her request for expedited consideration in its Order for Response. *See* Doc. 11.

## III.   Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United

4

States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV.    Discussion.

### A.    8 U.S.C. § 1226 governs Petitioner's detention.

Respondents argue Petitioner is detained under 8 U.S.C. § 1225(b)(2).[4] Doc. 14, at 3. Petitioner entered the country eight years ago, so she is not subject to § 1225(b)(2)(A)'s mandatory detention requirement. *See Quiroz v. Mullin,* --- F.4th ----, 2026 WL 1876709, at *5 (10th Cir. June 30, 2026) (holding "that noncitizens who entered the United States and . . . [are] thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)."); *see also Barbosa da Cunha v. Freden*, 175 F.4th 61, 70 (2d Cir. 2026) (concluding the petitioner's detention was "governed by Section 1226(a), not Section 1225(b)(2)(A)," and explaining that its holding "allows noncitizens . . . who are already present in the United

---

[4]    Section 1225(b)(2) mandates detention for noncitizens who are "applicant[s] for admission, [where] the examining immigration officer determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).

States and are determined not to be a flight risk or danger to the community to be released on bond under Section 1226(a) while their removal proceedings are pending").[5]

For over eight years after she was paroled into this country, Petitioner lived freely in this country. During that period, she complied with all immigration requirements, obtained a work permit, pursued her asylum application, and incurred no criminal convictions.

The Court should therefore at the least grant Petitioner's request for a "prompt bond hearing under [] § 1226(a)." *Munoz v. Grant*, No. CIV-26-544-D, 2026 WL 1078862, at *2 (W.D. Okla. Apr. 20, 2026); *see, e.g.*, *Colin v. Holt,* No. CIV-25-1189-D, 2025 WL 3645176, at *6 (W.D. Okla. Dec. 16, 2025) ("Petitioner has not received a bond hearing and Respondents raise no

---

[5]     Petitioner's asylum request does not change this outcome. This Court has "declined to find" that either refusing to voluntarily depart or seeking asylum "'constitutes 'seeking admission' for purposes of this subsection.'" *Malacidze v. Noem*, No. CIV-25-1527-D, 2026 WL 227155, at *3 (W.D. Okla. Jan. 28, 2026) (quoting *Cruz-Hernandez v. Noem*, No. CIV-25-1378-D, 2026 WL 18932, at *1 (W.D. Okla. Jan. 2, 2026)); *see also Hernandez Alvarez v. Warden, Fed. Det. Ctr*, 175 F.4th 1258, 1284 (11th Cir. 2026) ("This argument fails at the gate. Section 1225(b)(2)(A) makes it clear that an applicant for admission's status as one 'seeking admission' becomes relevant upon examination by an immigration officer, which occurs *before* a § 1229a proceeding even commences." (quoting 8 U.S.C. § 1225(b)(2)(A)).

objection challenging their obligations to provide bond hearings for noncitizens that are detained under 8 U.S.C. § 1226(a).").

### B.    Petitioner's due process claim.

In Ground I, Petitioner asserts that Respondents violated her due process rights by failing to provide an individualized justification for her detention. Doc. 1, at 6. "The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas,* 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)).

"The [Immigration and Nationality Act (INA)] establishes procedures for removing [and detaining noncitizens] living unlawfully in the United States." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); *see Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("The INA establishes procedures for the Government to use when removing certain noncitizens from the United States and, in some cases, detaining them.").

This Court analyzes Petitioner's procedural due process claim to determine whether she has a protected liberty interest, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Due Process Clause of the Fifth Amendment. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

"When the [G]overnment grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025); *see also Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from

8

immigration detention"). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). Respondents deprived Petitioner of her protected status when ICE detained her and placed her into custody.

Turning to the *Mathews* factors, the Court finds Petitioner has a significant private interest in remaining free from detention after spending eight years in the United States before her present detention. By initially releasing Petitioner on her own recognizance, the Government necessarily determined that she was "neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Respondents have presented no evidence that there was a change in this assessment. By permitting Petitioner to remain at liberty for eight years following her release, the Government enabled Petitioner to develop a protected liberty interest in remaining out of custody. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

Respondents do not suggest Petitioner violated any laws while in the United States. During her release, Petitioner's interest in release grew even stronger as she presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The first *Mathews* factor favors Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where she was detained without notice or a bond hearing.

"Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at *6 (E.D. Cal. Feb. 9, 2026), *adopted*, 2026 WL 440566 (E.D. Cal. Feb. 17, 2026). Respondents detained Petitioner with no procedural safeguards to determine whether the revocation of her release was justified. This factor weighs in Petitioner's favor. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

10

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the [G]overnment has an interest in enforcing immigration laws," the Government's interest in arresting Petitioner without a determination whether she posed a risk of flight or danger is low. *Saqib*, 2026 WL 350830, at *6; *see, e.g.*, *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T[he Court concludes that the [G]overnment's interest in re-detaining Petitioner . . . is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). And the Court can discern no significant administrative or fiscal burden associated with placing the burden on the Government to follow its own laws and regulations. *See, e.g.*, *Iza,* 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the [G]overnment comports with its own internal standards regarding parole revocation."). Especially given that Petitioner's detention was not deemed necessary for eight years.

### C.    Remedy.

Habeas is "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "The typical remedy for such detention is, of course, release." *Id.*; *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from

11

unlawful detention."). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243*; see also United States v. Allen*, 139 F.3d 913 (10th Cir. 1998) ("If the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release." (quoting *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir. 1990))).

The undersigned finds that the misapplication of the INA and the ongoing violation of Petitioner's due process rights require her immediate release subject to the same conditions of her earlier release.[6] This view is shared by numerous courts across the country.[7]

---

[6]     "Many orders in similar cases require that a bond hearing be set in a short period of time with an automatic release if the hearing does not occur." But "[t]hose cases do not examine the effect of a pending asylum petition or a clear conditional release order under § 1226." *Velasquez Montillo v. Brooksby*, 2026 WL 592355, at *10 (D. Utah Mar. 3, 2026).

[7]     *See Ewere v. Cerna,* No. CIV-26-320-SLP, 2026 WL 1207088, at *1-2 (W.D. Okla. May 4, 2026) (ordering Petitioner's "immediate release" for due process violation and denial of a bond hearing); *Singh v. Noem*, 2026 WL 766228, at *10 (D.N.M. Mar. 18, 2026) ("Petitioner's . . . release is required to remedy the ongoing due process violation caused by Petitioner being detained while his conditional parole has not yet been terminated."); *Montillo*, 2026 WL 592355, at *10 (concluding immediate release was the appropriate remedy where "there has been no notice of a change in circumstances requiring

### D.    The Court should decline to address Petitioner's remaining claims.

Given the undersigned's recommendation as to the disposition of Petitioner's INA and due process claims, the undersigned recommends the Court decline to address the merits of Petitioner's Fourth Amendment claim arising from Petitioner's warrantless arrest (Ground II). Doc. 1, at 63. The Court should also decline to address Petitioner's Grounds IV and V, as her claims regarding her conditions of confinement do not sound in habeas. *Cf. Buhl v. Berkebile,* 597 F. App'x 958, 959 (10th Cir. 2014) (holding the district court did not err in ruling that the petitioner's claims, which "challenge[d] only the conditions of his confinement," "could not proceed in habeas"). And Grounds III and VII of the Petition will be rendered moot if the Court adopts this Report and Recommendation.

## V.    Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **grant in part** Petitioner's habeas petition and **order Respondents to**

---

modification of the November 2021 [order of release on recognizance]"); *Vielma Uzcategui v. Brooksby*, 2026 WL 622751, at *13 (D. Utah Mar. 5, 2026) (same as to petitioner ordered released on her own recognizance in September 2023); *Murzi v. Noem*, 2026 WL 395111, at *2 (D. Colo. Feb. 12, 2026) (ordering petitioner's immediate release where petitioner had previously been released on parole).

**immediately release her from custody.**[8] **The undersigned also recommends that the Court order Respondents to certify compliance with the Court's order by filing a status report within ten business days of the Court's order**, and to promptly provide a copy of this order to counsel for the Warden of the Diamondback Correctional Facility. Finally, the Court should order that Respondents may not re-detain Petitioner without notice and a pre-deprivation hearing before a neutral decision-maker, where the Government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk and a danger to the community.[9]

---

[8] Should the Court determine a bond hearing is the appropriate remedy, the undersigned recommends that, given Petitioner's prolonged detention under the incorrect statute, the Court should find that it is more appropriate for the Government to bear the burden of proof in this context. *See, e.g.*, *Garcia Cortes v. Noem*, 2025 WL 2652880, at *5 (D. Colo. Sept. 16, 2025) (placing the burden of proof on the Government to justify the petitioner's continued detention (citing *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1185 (D. Colo. 2024)). Having released Petitioner in 2024, the Government ought to now bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a risk of flight such that she should remain in detention. *See L.G.*, 744 F. Supp. 3d at 1186 ("In general, the Supreme Court has held that the clear and convincing standard applies to civil detention where liberty is at stake." (first citing *United States v. Salerno*, 481 U.S. 739, 751 (1987), and then citing *Addington v. Texas*, 441 U.S. 418, 433 (1979))).

[9] Adoption of this Report and Recommendation will render moot Petitioner's outstanding Emergency Motions. *See* Docs. 4 & 6.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by July 13, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[10] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 9th day of July, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[10] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").